UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
CHAYA WIEDER,

                  Plaintiff,                  **Case No.:**

      -against-

                                            **COMPLAINT**

GREATER HUDSON VALLEY HEALTH SYSTEM,
(NOW KNOWN AS GARNET HEALTH) ("GHVHS"),
ORANGE REGIONAL MEDICAL CENTER ("ORMC"),
and ERICA BURGOS,

                  Defendants.
-------------------------------------------------------------------------x

     Plaintiff CHAYA WIEDER, through the undersigned counsel Eli Wagschal, Esq., complains of the defendants as follows:

## THE PARTIES

1. Plaintiff Chaya Wieder is, and was at all times relevant herein, a citizen of the United States and a resident of County of Orange, State of New York.

2. Defendant Orange Regional Medical Center ("ORMC") is part of the Greater Hudson Valley Health System (now known as Garnet Health) (collectively, "GHVHS"), a New York State not-for-profit corporation.

3. ORMC is and at all times relevant herein was a business corporation organized and existing under the laws of the State of New York, and is located at 707 East Main Street, Middletown, NY 10940, and serves as GHVHS's headquarters.

4. Defendant Erica Burgos (hereinafter "Ms. Burgos") upon information and belief, is an employee of ORMC and resides in Orange County, New York.

5. Defendant is an employer within the meaning of 42 U.S.C. § 2000e-(b).

## JURISDICTION AND VENUE ALLEGATIONS

6. This court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and under 28 U.S.C. § 1331 and § 1343(4).

7. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

### *Overview*

8. Plaintiff is an Ultra-Orthodox Hasidic woman who became a full-time employee of ORMC in April 2017.

9. Plaintiff received excellent performance evaluations and was viewed as an excellent worker throughout her two years of employment with ORMC, that is, up until she threatened to report about and acted in opposing unlawful discrimination.

10. Plaintiff was fired by ORMC through its Operations Manager, Erica Burgos, who "aided and abetted" the unlawful discrimination and subsequent retaliation against Plaintiff.

### *The Continuous Unlawful Discrimination*

11. Plaintiff was hired as a full-time inpatient coder with a Monday through Friday work schedule, entitled to benefits which included, inter alia: health, vision, dental, and life insurance; twenty days paid time off, and six paid Holidays that must be used within thirty days of New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving, and Christmas.

12. Plaintiff is a Sabbath observant Hasidic Jew, unable to work on Friday evenings, Saturdays as well as on Jewish Holidays and provided defendants with the dates of all Jewish Holidays for the year that her religion prohibits working on.

13. Approximately two months later Plaintiff received an email from Erica Burgos, denying her request for religious accommodations, and instead offered the following three options:

   1. ***Changing your position status to Per Diem*** *–This will allow you the flexibility to be able to create a work schedule that is conducive to your needs and the business needs of the Medical Center. Together with management a schedule will be created based on your availability. As a per diem employee, you are not eligible for the Medical Center health benefits, (medical, dental, flexible spending benefits) or Paid Time Off (PTO benefits).*

2. ***Changing your position from a full time (1.0) to a part .8 status*** *– This will allow you the flexibility to create a more defined work schedule that is conducive to your needs and the business needs of the Medical Center. You would be required to commit to a set schedule working 8 hours each day for 4 days per week, totaling 32 hours per week. As a part time employee (.8) you would receive prorated PTO days based on the actual hours worked each pay period. However, you would be eligible for the Medical Centers health benefits (examples provided above).\**

3. ***Position Remains as a 1.0 with flexibility regarding working days*** *– This will allow you to remain as a full time employee and with management you would be able to re-configure you current schedule. You would still be required to work 8 hours day 5 times a week, with a modified work week from Sunday-Thursday. However, your benefits and PTO will remain unchanged.\**

*\*No additional PTO time, including time off without pay will be granted above the awarded accrued PTO time.*

14. As is readily observable, the last two options would have forced plaintiff to abandon her religious beliefs, as even if she were to use all 20 PTO days to celebrate her religious holidays, the email specifically stated, "No additional PTO time, including time off without pay will be granted above the awarded accrued PTO time[1]."

15. Although full time employees receive six paid holidays, pursuant to Defendant's policy it "must be used 30 days before or 30 days after" the following Holidays: "New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving, [and] Christmas." Plaintiff was prohibited from applying any of these six days to celebrate Jewish holidays.

---

[1] Thus, the third option would have forced Plaintiff to work on eight days that working is prohibited by her religion and the second option on even more days, as she would only "receive prorated PTO days based on the actual hours worked..."

16. Plaintiff's request to use the Memorial Day Holiday to celebrate Shavuoth, a major Jewish Holiday celebrating the acceptance of the Torah, was denied although it fell only a day after Memorial Day.

17. Moreover, even if Plaintiff would have been given an exception, which she was not, she would still be two days short. Defendant contended that Plaintiff's request for 28 days off for Jewish Holidays (which are annually celebrated by millions of Orthodox Jews around the world) was too "voluminous" and "unreasonable."

18. Accordingly, the only option which allowed Plaintiff to take 28 workdays off (even unpaid) in observance of her religion was changing her employment status to Per Diem, thereby forced to give up all full-time employee benefits including health, vision, dental, and life insurance; twenty days paid time off, and six paid days to celebrate holidays.

19. Essentially, Plaintiff was forced to either work from home and give up all benefits or abandon her religion and work on Jewish holidays. As a result, Plaintiff reluctantly accepted the Per Diem option, explaining to Ms. Burgos, "I guess I'm willing to pay the price to be with my family and to have my holidays stress fee. It's just a matter of figuring out what the price is."

20. Defendant refused to increase Plaintiff's hourly rate to reflect her change of status to per diem, insisting that she is not entitled to the $37 hourly rate other per diems earned because she, unlike the others, was hired as a full-time employee which no one forced her to give up.

21. Plaintiff was shocked by the unfairness and continued to complain about this injustice, correctly maintaining for over two years that Defendant's refusal to adjust her hourly rate is blatant religious discrimination, as while she was hired as a full-time employee, she was forced to change her full-time status and give up all benefits in order to celebrate her religious holidays.

22. After complaining for two years about the continuous discrimination, Plaintiff was finally informed that the injustice was recognized and that her hourly rate will be increased by around $8 and will receive the $37 Per Diem rate, as originally requested.

23. The increase in pay was supposed to begin on September 29, 2019. In response, Plaintiff explained that if she does not get paid the difference retroactively, the discrimination cannot be considered rectified.

24. Upon defendant's refusal to retroactively pay plaintiff for the two years since she was forced to accept the Per Diem status, Plaintiff informed defendant of her intention to file a complaint for the continuous discrimination based on her religion.

### *The Unlawful Retaliation*

25. On September 25, 2019, four days before her rate of pay was supposed to increase from around $29 to $37 an hour, plaintiff was suspended without pay.

26. By letter dated October 21, 2019, Ms. Burgos informed Plaintiff that her employment with ORMC was terminated effective September 25, 2019, alleging that plaintiff engaged in "overt and systemic theft of time."

27. As a result of this allegation, plaintiff was initially denied unemployment benefits resulting in an investigation by Tim Teuchtler of the New York State Department of Labor (Case No.: ER# E04-51254) which revealed that plaintiff was fired without cause and never misrepresented her hours or otherwise engaged in theft of time.

28. Thus, in addition to being discriminated for the duration of her employment and subsequent retaliatory termination, plaintiff then had to suffer the humility of being slandered and falsely accused of being a thief, harming her reputation of character.

29. The New York State Department of Labor correctly determined that plaintiff did not engage in any sort of theft, and as keenly observed by Carol Rokeach, plaintiff's former senior co-worker, "they [defendants] were looking for something against you [plaintiff] that doesn't look like discrimination, so they come up with that lame excuse."

### *"Right to Sue" Letter*

30. Plaintiff has filed a timely charge of race discrimination and retaliation with the Equal Employment Opportunity Commission and brings this action within ninety (90) days of the receipt of a "Notice of Right To Sue" issued by the EEOC by letter dated June 24, 2021, a copy of which is attached hereto as <u>Exhibit</u> "1."

## - FIRST CLAIM FOR RELIEF -
### NATIONAL ORIGIN DISCRIMINATION, AND RETALIATION, IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000e

31. Plaintiff repeats and reiterates the above allegations as if repeated here at length.

32. Plaintiff is an Ultra-Orthodox Hasidic Jewish woman who was discriminated against because of her ethnicity and national origin, and Defendant's justification for Plaintiff's termination was, upon information and belief, pretextual and a sham.

33. As a proximate result of Defendants' actions, Plaintiff has been unable, despite reasonable efforts, to find comparable employment replacing her ORMC employment.

34. As a further proximate result of Defendants' discrimination against Plaintiff, she has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

35. As a further proximate result of Defendants' actions, Plaintiff has been damaged thereby in that she suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

36. The conduct of Defendants was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## - SECOND CLAIM FOR RELIEF -
### RACIAL DISCRIMINATION AND RETALIATION IN TERMINATION OF EMPLOYMENT IN VIOLATION OF THE CIVIL RIGHTS ACT of 1866, 42 U.S.C. § 1981

37. Plaintiff repeats and reiterates the above allegations as if repeated here at length.

38. The Civil Rights Act of 1866, 42 U.S.C. § 1981, protects individuals from employment discrimination and interference with contract based upon race.

39. Plaintiff was discriminated against in the terms and conditions of her employment contract with Defendant on account of her ethnicity and national origin

40. Plaintiff has been damaged thereby.

41. The conduct of defendants was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages.

## - THIRD CLAIM FOR RELIEF -
### RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e and § 1981

42. Plaintiff repeats and reiterates the above allegations as if repeated here at length.

43. Plaintiff objected to unlawful discrimination against Plaintiff and had an objective and reasonable belief that defendant was engaged in conduct unlawful under Title VII and § 1981.

44. Plaintiff opposed such unlawful conduct by making good faith claims or complaints of unlawful discrimination to defendant.

45. Almost immediately after ORMC and Ms. Burgos were informed that Plaintiff was threatening to file a discrimination claim, Plaintiff suffered adverse and hostile consequences, ultimately resulting in the termination of her employment on pretextual grounds.

46. As a result of Defendants' retaliatory actions, Plaintiff was damaged thereby.

**DEMAND FOR JURY**

*Plaintiff hereby demands trial by jury in this action.*

WHEREFORE, Plaintiff prays that this Court grant judgment containing the following relief:

1. An award of Plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of back pay and front pay compensating Plaintiff for loss of past and future salary and benefits;

2. An award of damages to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3. An order enjoining defendants from engaging in the wrongful practices alleged herein and to reinstate Plaintiff's employment with Defendant;

4. An award of punitive damages;

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Such other and further relief as this Court may deem just and proper.

Dated: September 27, 2021
      Bronx, New York

                                                      Respectfully submitted,

                                                      _____/s/_____
                                                      Eli Wagschal, Esq.
                                                      860 Grand Concourse, Suite 1H
                                                      Bronx, New York 10451
                                                      (718) 665-7700
                                                      eli.wagschal@rlgfirm.com